W. M. (Bugger) Large v. The State.

No. 7698. Decided October 17, 1923.

Rehearing denied February 13, 1924.

1.—Manufacturing Intoxicating Liquor—Sufficiency of the Evidence.

Where, upon trial of manufacturing spirituous liquor containing more than one per cent. of alcohol by volume, the evidence is sufficient to support the conviction, there is no reversible error.

2.—Same—Evidence—Absence of Witness, Accounting for.

Where, upon trial of unlawfully manufacturing intoxicating liquor, one of the circumstances relied upon by the State to prove that whisky was being manufactured and sold at the premises in question was the fact that an unusual number of automobiles stopped there after appellant leased the premises, there was no error to account for the absence of one of these parties. Besides, the testimony was withdrawn by the court.

3.—Same—Evidence—Bill of Exceptions.

There being no doubt that liquor was made on the premises and the real issue being what relation, if any, appellant sustained to the transaction, and the irresponsive answer by the witness not connecting appellant with it, the action of the court instructing the jury not to consider same presents no reversible error.

4.—Same—Requested Charge—Practice in Trial Court.

Where the requested charges that appellant had not leased the premises had been substantially submitted in the main charge of the court, there was no error in refusing the additional charges.

**5.—Same—Argument of Counsel.**

Where the connection of the statement of State's counsel was not shown, and in qualifying the bill of exceptions the trial judge certified that the district attorney stated the evidence as to appellant's marriage to another's divorced wife, there is no reversible error.

**6.—Same—Argument of Counsel—Bill of Exceptions.**

Where the bill of exceptions with reference to the arguments of the State's counsel is contradictory and presents no question for review there is no reversible error.

**7.—Same—Rehearing—Sufficiency of the Evidence.**

Where practically the only complaint stressed in appellant's motion for rehearing is the insufficiency of the evidence to sustain the conviction, this court must overrule the same after again carefully considering the evidence.

**8.—Same—Indeterminate Sentence—Practice on Appeal.**

The trial judge has evidently overlooked the indeterminate sentence law, which is herewith applied and the sentence reformed accordingly.

Appeal from the District Court of Floyd. Tried below before the Honorable R. C. Joiner.

Appeal from a conviction of unlawfully manufacturing intoxicating liquor; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Weldon & McDonald,* for appellant.—On question of insufficiency of the evidence: Williams v. State, 227 S. W. Rep., 316; Hardaway v. State, 236 id., 467; Cramer v. State, 246 id., 380.

*R. G. Storey,* Assistant Attorney General, and *Charles Clements,* District Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for manufacturing spirituous liquor containing more than one per cent of alcohol by volume. Punishment was assessed at two years in the penitentiary.

The officers searched certain premises in Floyd County, and in various places at and about the house found equipment which the evidence established could be so connected and operated as to manufacture whisky. Buried in the garden was also found a fifteen gallon keg half full of whisky. The evidence is sufficient to show that whisky had been manufactured on the premises. As we understand the record there is no serious contention on this point, the claim of appellant being that the evidence is insufficient to show his participation in making the liquor.

The premises in question was owned by the Texas Land and Development Company, of which W. F. Lowe had the management. It had been leased to W. B. Mooney for the year 1921. On March 3d,

or 4th Mooney, with Lowe's consent, sold the lease to appellant, but the contract with appellant was not prepared until March 26th, at which time it was signed by him. Appellant told Mooney that he was a single man and that his brother, Walter Large, with his family, would move to the place. Mooney moved away on March 8th, leaving among other things belonging to him, a stove which was on the back gallery. Mooney returned three weeks later for some of the articles he had left. The stove had been moved in the kitchen and a barrel set up with pipes running from the barrel into the fire box of the stove and back into the barrel. The door to the fire box had been taken off and the opening around the pipes where they entered was filled with clay. He slept in the house that night and detected an odor like sour corn. Appellant was not seen at the house when Mooney reached there before sundown, but before night he and two other men were there, and four men besides appellant were at the house that night; Mooney identified appellant, Nunley, Walter Large and Fred Large as being on the premises the night he stayed there; Mooney then went to Floydada and upon his return the second time the same parties were on the premises except Walter Large whom the witness did not see at this time. Mooney did not leave the manufacturing equipment on the premises and the evidence makes it certain that it was brought there and installed after he left the place on March 8th.

T. L. Patterson lived immediately across the road within fifty or sixty yards of the premises in question. He was acquainted with appellant and also Claude Nunley, Fred Large and Walter Large. He could not give the date exactly but knew when Mooney moved off the premises and about when appellant moved on. He testified as follows:

"After the defendant moved there, I have seen him around the place; every few days I would notice him around there. I couldn't say how often I saw him there during the month of April, but I have seen him there, and he was there off and on most all the time, or around there sometime. I know when Mr. Mooney sold out and left, and I know when the defendant came there, and I saw him there occasionally afterwards."

This same witness testified that Walter Large lived on the premises about three weeks and that Nunley and his wife came a short time after Walter Large left. Witness further testified that he did not know how long it was after Walter Large moved away until Nunley moved on the place, but that he commenced seeing him around there about the same time Walter moved away and saw him there off and on from that time on; that he thought he was there all the time.

J. R. Bowman testified that he was acquainted with appellant and that the Mooney place was about a half a mile from witnesses'; that prior to the time officers made a raid he had seen appellant

around the place occasionally. George Graham testified that he was acquainted with both appellant and Fred Large and that in passing the Mooney place he had seen both of them there, but could not say how often. Another, Roy Bowman, testified that he could not state which he saw about the place most, Walter Large or appellant, and that he did not know that he saw Nunley there any more than appellant, but that he saw appellant about the place as if he were attending to it; but that he saw all three of them there sometimes when he would pass. At the time of the raid Nunley opened the door and the search warrant was read; during the reading Fred Large and appellant came into the room from the kitchen. One witness who was with the officers testified that at the time they went in the house he saw someone in the kitchen working about the sink; and that later when he went in the kitchen he found some freshly washed fruit jars which bore the scent of whisky. This sink was connected by a pipe with an abandoned dugout which appears to have been used as a cesspool. Upon going to the cesspool and stirring it with a stick a strong odor of whisky was detected.

We have not undertaken to set out all the testimony in detail, but are of opinion the circumstances proven by the State authorized the jury to reach the verdict returned. A number of one hundred pound sacks of sugar, hops and malt syrup are shown to have been sold to Nunley during the time he was upon the premises. The indictment was against appellant, Fred Large, and Nunley jointly, but appellant only was upon trial. It was the theory of the State supported by the evidence, that the three of them acted together in the manufacture of the whisky and proof of the acts of all three therefore became admissible.

Complaint is made in bill of exception number one that the State was permitted to prove the whereabouts of one Buck Sams and a party by the name of Hatcher. One of the circumstances relied upon by the State to prove that whisky was being manufactured and sold at the premises in question was the fact that an unusual number of automobiles stopped there after appellant leased the premises. Two of the parties named who had been seen to stop there were Hatcher and Sams. It was pertinent in our opinion for the State to account for the absence of Sams and Hatcher and the admission of this testimony does not appear to present error; however, at the request of appellant the court instructed the jury not to consider the evidence introduced by the State with reference to the whereabouts of Sams and Hatcher. If there was any error in admitting this testimony, which we fail to perceive, the special charge cured it.

It appears from bill of exceptions number two that witness Graham stated that Sams had told him (witness) that he (Sams) had gone to the premises to buy liquor. It appears from the qualification to

the bill that whatever question may have been asked the witness his answer was not responsive, and that immediately upon same being given the court instructed the jury not to consider the same. There being no doubt that liquor was made on the premises, and the real issue being what relation, if any, appellant sustained to the transaction, and the irresponsive answer not connecting appellant with it, we deem the matter sufficiently rectified by the action of the court.

Bills of exception three and four complain at the refusal of the court to give two special charges requested by appellant. Appellant defended on the ground that he leased the premises in question for his brother Walter Large, and that after Walter moved to the premises appellant was there only once or twice. This issue was covered in the charge of the court and in a special charge which was given. The two charges refused are upon the same issue. We think it had been sufficiently and properly submitted in the charges given and that the court committed no error in declining to give the additional charges requested.

It developed upon the trial that during the time Nunley was living upon the premises his wife and appellant went away together. Later on she sued for and obtained a divorce. In a short time thereafter she and appellant married. His wife (formerly Mrs. Nunley) testified in his behalf on the question of alibi, and also to facts which, if believed, would have shown that some equipment for the manufacture of liquor was brought to the place by Nunley and herself at the time they moved there. Appellant complains that during the closing argument the district attorney stated that appellant stole the wife of Nunley, the other fellow, and run off with her.

The connection in which the statement was made is not shown. In qualifying the bill the court says the district attorney stated the evidence and told the jury at the time that his deduction therefrom was that appellant had run off with Nunley's wife. We are not prepared to say the district attorney was drawing an unauthorized conclusion. The qualification shows that he was stating the evidence and the jury knew that the statement complained of was only his conclusion.

In another bill appellant complains that the district attorney stated to the jury—"We did not get all the evidence in this case before the jury because counsel for defendant objected."

The bill is signed by the learned trial judge with the statement that he did not remember any such argument or objection thereto; that he was sure if such was made the jury was instructed not to consider it. Nothing is shown in the bill save the isolated statement complained of; it does not appear what preceded it or what followed. As we find it in the record, the objections were that the remark—"left the impression upon the minds of the jury that all testimony that the

State undertook to introduce was inadmissible in evidence and was not other and further evidence than that introduced and was further evidence of the guilt of the defendant, whether the objections thereto by counsel for the defendant was sustained by the court or not.''

It will be seen from the foregoing question that the bill is contradictory, and presents no question for review.

Finding no error in the record which in our opinion would authorize a reversal, the judgment is affirmed.

*Affirmed.*

---

### ON REHEARING.

### February 13, 1924.

LATTIMORE, JUDGE.—Practically the only complaint stressed in appellant's motion is the insufficiency of the testimony and we have again carefully reviewed it. We are but strengthened in our belief that the evidence amply supports the judgment of conviction. In addition to what was said by us upon this phase of the case in our original opinion, we call attention to the fact that on the occasion of the raid made by the officers appellant was found in the southwest room of the house in which were a number of jars freshly washed from which water was dripping and in each of which the odor of whisky was detected. The sink in which the bottles had been washed was connected with a sort of cesspool in which also the odor of whisky was perceptible. The quantity of paraphernalia found was referred to and it is shown that part of it at least was purchased by appellant and that when found it all gave evidence of recent use. Fermenting mash was on the premises and the keg of whisky found in the garden. Appellant insists that we may have become confused over the identity of appellant with Walter Large but we were not. The proof shows beyond question that appellant purchased the lease of the premises, and while he stated that Walter Large was going to live on the place, the latter stayed there but a few days and was succeeded by one Nunley while appellant was seen in and around the premises all of the time and during the occupancy of both. We have no doubt of the sufficiency of the testimony to support the jury's conclusion.

The motion for rehearing will be overruled.

SUPPLEMENTAL OPINION REFORMING SENTENCE.

May 7, 1924.

HAWKINS, Judge.—The attention of the court has been called to the fact that the verdict condemns appellant to the penitentiary for two years, and the sentence is to the same effect. The learned trial judge evidently overlooked applying the indeterminate sentence law. On our own motion we direct that the sentence be reformed to read that appellant be confined in the penitentiary for not less than one nor more than two years.

*Sentence reformed.*